**IOELU F.C. PEN, Plaintiff,**

**v.**

**FAIMA LAVATA'I, MEL LAVATA'I
and DOES 1-V, Defendants,**

High Court of American Samoa
Land and Titles Division

LT No. 61-92

March 21, 1994

Before KRUSE, Chief Justice, VAIVAO, Associate Judge, and AFUOLA, Associate Judge.

Counsel: For Plaintiff, Togiola T.A. Tulafono
 For Defendants, Afoafouvale L.S. Lutu

Opinion and Order:

Plaintiff Ioelu F.C. Pen seeks a permanent injunction against the defendant Faima Lavata'i and his son Malakai, aka Mel, Lavata'i, to enjoin them from interfering with his use and enjoyment of a certain parcel of land leased to him by the late Lavata'i Natia, then senior matai of the Lavata'i family of Nu'uuli. The lease agreement, dated July 6, 1989, stipulates a term of 55 years and relates to an area approximating .389 of an acre of Lavata'i communal land known as "Lepine." The agreement also provides for an initial monthly rental of $150 during the first year of the lease and $200 per month for the remainder of the lease.[1] The lease agreement was presented to and approved by Acting Governor Galea'I Poumele on October 3, 1989, pursuant to A.S.C.A. § 37.0221.[2]

Plaintiff is a not a member of the Lavata'i family; the defendants are. Plaintiff claims that he filed suit after several encounters with defendants' attempts to interfere with his business activities on the leased site. On the other hand, Faima Lavata'i, a brother of the late senior matai, claims that the area leased to plaintiff constitutes a part of Lepine which has been assigned to him for his use and livelihood in accordance with custom. Defendants also charge that plaintiff's use of the land for furniture making has been both noxious and noisome and often undertaken without regard to time of day. Malakai Lavata'i complained on the stand about strong fumes emanating from plaintiff's workshop and his noisy machinery's being particularly bothersome in the early hours of the morning and even on Sundays.

After hearing the evidence, the court visited the location of the disputed site. Although plaintiff claimed that Faima was not on Lepine when he first went onto the land in 1983, we are satisfied that the leased area had

---

[1] Plaintiff admits that since the death of the senior matai, he has not being paying the stipulated rent.

[2] A.S.C.A. § 37.0221(a) permits the leasing of native land "with the approval of the Governor."

165

already been assigned to Faima, for the following reasons: Faima testified that he first entered this part of Lepine prior to the Second World War and established extensive cultivations with which he served the matai and family. He further testified that he then built a number of houses there. Faima's claim to extended use and occupation was corroborated by Valasi Gaisoa, his niece and daughter of the late Lavata'i Natia. From our visual inspection of the disputed site, we noted that the area is surrounded by the homes of Faima and his immediate family, together with a garage which, according to the testimony, was located on Lepine at Faima's instance. Visual inspection also supported Faima's testimony about his having once bulldozed and enlarged the general area, from the direction of the main highway towards the base of mountain inland. He additionally submitted corroborating government job orders, evidencing his hire of heavy equipment in 1980 for use on a site referred to as "Lepine," together with building permits which related to his subsequent building of a number of "European"-type housing throughout the 1980s on Lepine. At the same time, plaintiff conceded that in the process of his setting up his business yard on Lepine, he had to clear certain subsistence crops that were growing on the site. These were crops that Faima had claimed were his. Finally, the court could not help but notice on its site-visit that Faima's settled occupation was very distinct from the similarly settled occupation to the west of Tuinei Lavata'i, another of Faima's brothers, and Lavata'i Natia.

Plaintiff, on the other hand, was recently brought onto the site by Tuinei Lavata'i. He acquired the extended leasehold from the senior matai sometime shortly thereafter. Why the senior matai executed such a lease in favor of a non-family member, in derogation of a family member's claim, was not made clear on the evidence. Like the senior matai, Tuinei Siaki has also since passed away. All that we could gather from the evidence was that plaintiff, as he had testified, had sought out the lease from the senior matai in order to "secure his future." Faima, on the other hand, testified that the matter of plaintiff's presence on the land and his dealings with Tuinei Siaki was earlier brought up at a family meeting presided by the senior matai. At this meeting, he expressed his objection with plaintiff's presence and he pleaded with the matai to relocate plaintiff to Tuinei's side of the property, since it was the latter who had invited plaintiff onto the land.

Subsequent to that family meeting, a lease was executed and presented for gubernatorial approval, all without Faima's knowledge or consent. He, as well as other family members, only learned of the existence of a lease when these proceedings arose.

166

The evidence further revealed that certain third parties, who were not before the court, took mortgage interests on the lease as collateral for certain loans made to plaintiff. Amerika Samoa Bank apparently gave plaintiff a secured loan on October 5, 1989, in the amount of $30,000.00, as evidenced by plaintiff's mortgage instrument filed with the Territorial Registrar on October 10, 1989, and recorded in Native Leases, Volume 4 at pages 167-68. The United States Small Business Administration subsequently loaned plaintiff the sum of $174,400.00, as evidenced by plaintiff's mortgage instrument dated October 19, 1992, and received by the Territorial Registrar's Office on October 23, 1992.

## DISCUSSION

Plaintiff's principal argument is that he has a valid and enforceable lease. He contends that the lease was within the matai's exclusive competence, and he cites *Vaimaona v. Tuitasi*, 13 A.S.R.2d 76 (Land & Titles Div. 1989) (motion for new trial denied), *aff'g* 12 A.S.R.2d 68 (Land & Titles Div. 1989), *aff'd* 18 A.S.R.2d 88 (App. Div. 1991), for the proposition that "the Samoan custom that major family decisions [by the *sa'o* (senior matai)] should be made with consultation with the whole family is not among those incorporated into statutory restrictions on the otherwise plenary powers of a 'sa'o' over family lands." Plaintiff's Post Trial Brief, at 2 (emphasis in original). He further argues that "the offer to register the [leasehold] instrument does not require 'Notice' of any sort · by the statutes of American Samoa." *Id.* (emphasis in original). As we understand plaintiff's contention, it is that the Samoan custom requiring a matai to consult with his family before making any major decisions concerning family lands was not a substantive requirement of the law which regulates the leasing of communal lands. Furthermore, it is argued, the lease in question was given favorable recommendation by the Land Commission and then duly approved by the Governor in accordance with applicable statutes; these applicable statutes did not require prior notice of this process to family members.

Defendants, on the other hand, contend that the subject lease is invalid because it was, among other things, entered into without their knowledge and approval. Citing *Fairholt v. Aulava*, 1 A.S.R.2d 73, 74 (Land & Titles Div. 1983), defendants claim that their right to family lands, as Lavata'i family members, is a property right protected by both the United States and American Samoa Constitutions.

The issue in this case is not simply the question of whether or not a matai can enter into a lease of communal land without family

167

consultation. Instead, the issue before us is whether the senior matai can effectively lease family lands to a third party and thereby effectively disseise a family member from use of family land assigned to him. After all, a matai's authority or *pule* over family lands is not unfettered when it comes to dealing with the rights of family members; rather, "it is a pule which must be used for the benefit of family members and justly and fairly. It must not be used unreasonably and unjustly." *Tali v. Tupeona*, 4 A.S.R. 199, 206 (Land & Titles Div. 1961). The court has recognized "the unquestioned right of a family member to use communal land [as being] a property right under the due process clause of either the U.S. or Samoan constitutions." *Fairholt*, 1 A.S.R.2d at 74 (discussing U.S. Const. Amend. V; Rev'd Const. Am. Samoa Art. I, § 2); *see Lutu v. Taesaliali'i*, 11 A.S.R.2d 80, 87 (Land & Titles Div. 1989) (citing *Tuanaitau v. Pagofie*, 4 A.S.R. 375, 381 (1963); *Fairholt*, 1 A.S.R.2d at 74); *Gi v. Temu*, 11 A.S.R.2d 137, 143 (Land & Titles Div. 1989) (citing *Lutu*). On the other hand, a non-family member "by definition has no such right." *Gi*, 11 A.S.R.2d at 143 (quoting *Lutu*, 11 A.S.R.2d at 87). Furthermore, a family member is ordinarily entitled to possess land assigned to him for his lifetime. *Gi*, 11 A.S.R.2d at 142 (citing *Taesali v. Samuela*, 3 A.S.R. 359, 361 (Trial Div. 1958).

Having "the general ability to administer the family lands but at the same time he has no authority to alienate land in his own right," a matai's authority is like that of a trustee in that he is to act for the benefit of the family. *Lutu*, 11 A.S.R.2d at 88. "It thus follows that when a matai undermines the rights of a family member (a beneficiary of family property) to favor a non-family member, he is surely acting inconsistent with, and is in breach of, that duty to exercise his pule for the benefit of the family members." *Lutu*, 11 A.S.R.2d at 88. Hence, a family member may, in certain circumstances, seek judicial review of matai action, and the court will enjoin "arbitrary, capricious, or illegal actions or those in which there has been an abuse of discretion on the part of the of the matai." *Fairholt*, 1 A.S.R.2d at 79; *see Lutu*, 11 A.S.R.2d at 88; *Gi*, 11 A.S.R.2d at 142; *cf. Vaimaona*, 12 A.S.R.2d at 70-71 (although land title could not be invalidated when matai sold land without consulting family, thus violating Samoan custom, affected family members could file suit to (1) obtain an accounting from the matai, (2) obtain compensation for their assigned lands, and (3) possibly remove the matai's title).

Thus, a matai cannot revoke an assignment of land, made in accordance with Samoan customs, for a family member's use and thereby deprive that family member of its possession, "except for good cause."

*Taesali*, 3 A.S.R. at 361; *Gi*, 11 A.S.R.2d at 142 (citing *Taesali*).[3] "Good cause" for removal includes a failure to render *tautua* (traditional service to the matai and family) and an overriding family purpose. *See, e.g., Leapaga v. Masalosalo*, 4 A.S.R. 868, 872 (App. Div. 1962) (*tautua* not rendered); *Tiumalu v. Lio*, 3 A.S.R. 176, 179-80 (Trial Div. 1955) (possible use of land for a family graveyard). However, with regard to a family purpose, a matai can order a person's removal only after:

> a. A family meeting at which all parties are permitted to be heard.
>
> b. A decision by the matai, reasonable under the circumstances, that the removal is for an important family purpose.
>
> c. Provision of specific alternate land for erection of a dwelling unit if desired, or other arrangement reasonable under the circumstances. . . .
>
> d. Allowance of such time as is reasonably necessary to construct the new house or complete the other reasonable arrangements.

*Coffin v. Mageo*, 4 A.S.R. 14, 18 (Land & Titles Div. 1970).; *see Gi*, 11 A.S.R.2d at 141-42 ("[A] matai should ordinarily consult with the family, including especially those family members directly affected, before taking land assigned to a family member in order to use the land for some other family purpose."). Thus, if a person has expressly or implicitly been assigned the "communally-owned house and appurtenant areas," a matai may not remove him without meeting the aforementioned requirements. *Coffin*, 4 A.S.R. at 18.

In short, plaintiff's suggestion that the matai's power over family lands is "plenary," and thus without limits, is erroneous. Plaintiff's citing of *Vaimaona* to support his argument is also misplaced. *Vaimaona* involved a family's challenge to a matai's alienation of communal land without his consulting the family, as well as a claimed lack of notice. However, that case makes no mention of the disputed communal land's being assigned to an individual. In contrast, the case now before this court involves more than the matters of a family's being consulted or given notice. Defendants were assigned their land and so have a property interest which is protected under the due-process clauses of the United States and

---

[3] This right is not absolute, though--the matai can reallocate communal land as long as he provides the displaced family members with equivalent land. *Talili v. Satele*, 4 A.S.R.2d 23, 27 (Land & Titles Div. 1987).

American Samoa Constitutions. *See* U.S. Const. Amend. V; Rev'd Const. Am. Samoa Art. I, § 2.

As such, the defendants are entitled to possess the family's land which has been assigned to them. The evidence does not show that the matai had good cause, such as defendants' failure to perform their traditional service, to revoke their land assignment. Likewise, the evidence has not demonstrated an overriding family purpose; plaintiff's lease certainly does not qualify. In light of inflation and the increasing scarcity of unassigned land in the territory, the $200-a-month rental payments, set for a 55-year term, at best provides only a marginal benefit to the family.

However, the lease was agreed to by the family's matai, approved by the Governor, and registered by the Territorial Registrar. Immediately canceling the lease would cause plaintiff, and thus his mortgagees, significant financial hardship. The third-party lending institutions were not before this court to raise their own respective arguments against canceling the lease. Therefore, this court will exercise its equitable powers in not terminating the lease during the term of plaintiff's aforementioned mortgages. In order to ensure, however, that no future encumbrances be placed on this property, a copy of this judgment shall be placed with the copy of the lease in the Territorial Registrar's records. Also, because the lease concerned a portion of land which has been assigned to the defendants, all future rental payments, as well as any rental arrearages, are to be paid directly to the defendants. With these conditions in mind, plaintiff's request for injunctive relief is granted; that is, defendants shall refrain from any further self-help measures against plaintiff's business activities on the leased land. Judgment shall enter accordingly.

It is so ordered.